UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


FAIRFIELD INDUSTRIES, INC.                   CIVIL ACTION
d/b/a FAIRFIELDNODAL


VERSUS                                        NO: 12-817


EL PASO E&P COMPANY, L.P.                     SECTION: R


## ORDER AND REASONS

Before the Court is defendant El Paso E&P Company, L.P.'s opposed motion to transfer venue to the Southern District of Texas. Because the Court finds that the forum selection clause at issue applies to the plaintiff's claims, the Court GRANTS defendant's motion to transfer venue.


**I.    BACKGROUND**

This breach of contract and unjust enrichment dispute arises out of a series of licensing agreements between plaintiff Fairfield Industries, Inc. d/b/a FairfieldNodal and defendant El Paso E&P Company, L.P. Fairfield owns a portfolio of seismic data that it licenses to companies exploring for oil and gas on the Outer Continental Shelf. In the license agreements it executes with companies, Fairfield includes a provision that if a controlling interest in the licenseholder is acquired by another

company, the acquiring company may use the Fairfield data but must pay an additional license fee of 50% of the original license fee paid to Fairfield.

Fairfield entered into a Master License Agreement with Zilkha Energy Company on April 9, 1992.[1] The agreement stipulated that any transfer of data to a third party, defined as partners and purchasers, would trigger the additional fee.[2] Zilkha underwent several name changes, and its subsequent iteration merged with defendant El Paso in 2005. Fairfield contends that El Paso, as the effective purchaser of Zilkha, owes it the additional licensing fee described in the Zilkha Master Licence Agreement.

Similarly, on May 18, 1999, Fairfield entered into a Master License Agreement with Coastal Oil and Gas Corporation.[3] That agreement was amended on October 14, 2002 ("Coastal MLA Amendment").[4] Fairfield alleges that El Paso directly or indirectly merged with the licensee of the data involved in these agreements. Thus, Fairfield alleges that El Paso owes it the additional licensing fees that the Coastal MLA and its Amendment called for if data were used by a third party. In 2007, Fairfield

---

[1]   R. Doc. 1-1.

[2]   *Id.*

[3]   R. Doc. 1-2.

[4]   R. Doc. 1-3.

and El Paso directly executed a Master License Agreement ("2007 MLA"), which allowed El Paso to license data from Fairfield.[5] The agreement provided that El Paso, as licensee, was the successor in interest to each of the other entities that had earlier contracted with Fairfield. The 2007 MLA further provided that it superseded the other agreements between Fairfield and El Paso's predecessors "without prejudice to the rights and obligations accrued thereunder."[6] The agreement contained a forum selection clause that named Harris County, Texas as the location for any litigation related to the agreement.[7]

Fairfield sued El Paso for breach of contract and unjust enrichment in this Court on March 29, 2012.[8] El Paso then filed a motion for improper venue and sought to transfer the litigation to the Southern District of Texas, which encompasses Harris County. El Paso asserts that the forum selection clause of the 2007 MLA applies to the Zilkha and Coastal Master License Agreements, on which Fairfield bases its claims. Fairfield argues that 1) the forum selection clause does not apply, as El Paso owes fees based on agreements in place before the 2007 MLA, which explicitly preserved the rights under the old agreements, and 2)

---

[5]   R. Doc. 1-4.

[6]   *Id.* at 1.

[7]   *Id.* at 8.

[8]   R. Doc. 1.

El Paso has not demonstrated that the Southern District of Texas is such a preferable forum so as to negate the plaintiff's choice of venue.

## II.  STANDARD

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses" and "in the interest of justice," the Court may transfer an action to any other district where the plaintiff could have filed suit. Before a defendant can establish that transfer is proper under section 1404, he must first demonstrate that the district to which he seeks transfer would have been an appropriate venue had the plaintiff filed the action there. *Hoffman v. Blaski,* 363 U.S. 335, 343–44 (1960); *In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004). The defendant must then show "good cause" for transfer. *In re Volkswagen of America, Inc.,* 545 F.3d 304, 315 (5th Cir. 2008) (en banc). To show good cause, a defendant "must satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id.* (internal quotation marks omitted). When the transferee venue is not clearly more convenient, the reviewing court should respect the plaintiff's choice of venue. *Id.*

In evaluating whether the defendant has shown good cause, the district court must consider the private and public interest

factors articulated in *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 508 (1947). *In re Volkswagen of America, Inc.,* 545 F.3d at 315. The private interest factors include "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make a trial easy, expeditious, and inexpensive." *Id.* (internal quotation omitted). "The public interest factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (internal quotation omitted). Although the *Gilbert* factors apply in most transfer cases, they are not necessarily exhaustive or exclusive, and no single factor is of dispositive weight. *Id.* (citing *Action Indus., Inc. v. U.S. Fid. & Guar. Corp.,* 358 F.3d 337, 340 (5th Cir. 2004)).

When a case involves a forum selection clause, the Supreme Court has held that the clauses should receive neither dispositive weight nor no consideration, "but rather the consideration for which Congress provided in § 1404(a)." *Stewart Org., Inc. v. Rioch Corp.,* 487 U.S. 22, 31 (1988). The Court held, however, that the existence of a forum selection clause is "a significant factor that figures centrally in the district

court's calculus." *Id.* at 29; *see also Int'l Software Sys., Inc. v. Amplicon, Inc.*, 77 F.3d 112, 115 (5th Cir. 1996) (citing *Stewart*, 487 U.S. at 27-29); *Worker's Comp. Legal Clinic of Louisiana v. Bellsouth Telecomm. Inc.,* No. 03-0722, 2003 WL 21750628, at *2 (E.D. La. July 28, 2003) (indicating that private and public interest factors should be considered in a motion to transfer but that a valid forum-selection clause should receive deference).

## III. DISCUSSION

Fairfield does not dispute that it could have filed suit in the Southern District of Texas. El Paso's headquarters is located in Houston, and thus venue is appropriate there under either 28 U.S.C. § 1391(c), or the venue provision in the Outer Continental Shelf Lands Act ("OCSLA"), the source of Fairfield's subject matter jurisdiction. *See* 43 U.S.C. § 1349(b)(1) (venue may be laid "in the judicial district in which any defendant resides or may be found or in the judicial district of the State nearest the place the cause of action arose"). Instead, plaintiff contends that the forum selection clause relied on by defendant does not apply and that El Paso has put forth no other reasons justifying a transfer of venue.

**A. Applicability of Forum Selection Clause**

The forum selection clause in the 2007 MLA signed by Fairfield and El Paso states:

> This agreement will be governed by and construed in accordance with the law of the State of Texas, excluding any conflicts-of-law rule or principle that might apply the law of another jurisdiction. **All disputes under or relating to this Agreement will be submitted to the jurisdiction of, and venue will be proper in, the state or federal courts having jurisdiction in or for Harris County, Texas**. The parties will not submit any such dispute to any other court unless those courts decline jurisdiction.[9] (emphasis added).

The clause's mandatory language signals that the parties agreed to litigate any issues related to the agreement exclusively in Harris County. *See, e.g., Dorsey v. Northern Life Ins. Co.,* No. 04-0342, 2004 WL 2496214, at *3 (E.D. La. Nov. 5, 2004) ("Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced."). Fairfield contends, however, that its claims do not fall under the forum selection clause. Courts look "to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause." *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir. 1998).

The 2007 MLA's forum selection clause extends broadly to "all disputes under or relating to this Agreement."[10] Fairfield

---

[9]    R. Doc. 1-4 at 8.

[10]    R. Doc. 1-4 at 8.

7

asserts that its claims are unrelated to the 2007 MLA because they stem from earlier agreements and were preserved by the 2007 MLA's provision that terminated prior contracts "without prejudice to the rights and obligations accrued thereunder to the date of this Agreement."[11] For the purposes of this motion, El Paso does not contest Fairfield's right to bring its claims. Instead, El Paso contends that because Fairfield did not take action on its claims until after it signed the 2007 MLA, Fairfield is bound by the 2007 MLA and its forum selection clause and thus has waived its right to sue in Louisiana.

The Court finds that the terms of the 2007 MLA unambiguously govern this dispute, because the dispute arises "under or relate[s]" to the 2007 agreement.[12] The 2007 MLA provides that El Paso is the successor in interest to the previous licensees under the earlier master license agreements.[13] It explicitly cancels the previous agreements between Fairfield and El Paso's predecessors in interest.[14] The 2007 MLA then makes El Paso the licensee of all of the data involved in the earlier agreements.[15] It provides that the supplements to the earlier agreements are

---

[11]     *Id.* at 1.

[12]     *Id.* at 8.

[13]     *Id.*

[14]     R. Doc. 1-4 at 1. (stating that the earlier agreements "are hereby cancelled").

[15]     *Id.*

8

now supplements to the 2007 MLA and subject to its terms.[16] These supplements identified the data that was subject to the licenses.[17] Thus, the 2007 MLA gives El Paso the license to all of the data covered by the earlier agreements.

The 2007 MLA also contains an integration clause, which establishes the 2007 MLA as the governing document for El Paso's and Fairfield's business relationship and mutual obligations. This provision states:

> This Agreement **contains the entire understanding of the parties with respect to the subject matter of this Agreement, and it supersedes all prior understandings and agreements,** whether written or oral, and all prior dealings of the parties with respect to the subject matter hereof.[18] (emphasis added).

Because the subject of the earlier agreements is subsumed under the 2007 agreement, the dispute at issue clearly relates to the 2007 MLA. Therefore, by its terms, the forum selection clause applies here.

It is true that this dispute concerns payments already due under the earlier contracts, which the 2007 MLA cancelled "without prejudice to the rights and obligations accrued thereunder."[19] But, applying the forum selection clause of the

---

[16]   *Id.*

[17]   *Id.*; 1-2 at 1.

[18]   R. Doc. 1-4 at 8.

[19]   R. Doc. 1-4 at 1.

9

2007 MLA to this dispute does not render the agreement's "without prejudice" provision meaningless.  The 2007 MLA explicitly terminated and replaced the earlier contracts but preserved the substantive rights and obligations accrued under those agreements up to the date of termination. Thus, the 2007 MLA does not bar Fairfield from seeking fees owed under the earlier contracts. But, the earlier contracts did not confer rights to sue in any particular forum. Thus, the choice of venue was not an accrued contract right that had to be preserved when the earlier contracts were terminated. Moreover, had the parties chosen to exclude disputes about the earlier contracts from the operation of the forum selection clause in their 2007 agreement, they could have done so, but they did not. For the foregoing reasons, the Court finds that the forum selection clause mandating a Texas forum applies to the present case.

### B. Good Cause

The existence of a forum selection clause is not dispositive in determining venue, but instead represents a heavily weighted factor among other considerations. *See, e.g., Stewart,* 487 U.S. at 31. As an additional factor supporting transfer, El Paso contends that the Southern District of Texas is a more convenient forum, because the contracts at issue were executed in Texas, and the El Paso and Fairfield employees who negotiated the 2007 MLA

all live in the Houston area.[20] That many of the potential witnesses live elsewhere is an important private interest factor to be considered in evaluating the convenience of the forum. *See, e.g., In re Volkswagen of America, Inc.,* 545 F.3d at 315; *R.T. Casey, Inc. v. Cordova Tel. Co-op, Inc.*, No. 11-2794, 2012 WL 1188796, at *2 (E.D. La. Apr. 9, 2012) ("One of the most important factors in the Section 1404(a) analysis is the inconvenience for non-party, non-expert, non-resident witnesses."). Further, El Paso notes that the principal place of business of both El Paso and Fairfield is in Texas.

El Paso also argues that, under the terms of the 2007 MLA, Texas law will be applied to any disputes between the parties and that Texas has an interest in the application of its law. The 2007 MLA states, "This Agreement will be governed by and construed in accordance with the law of the State of Texas, excluding any conflicts-of-law rule or principle that might apply the law of another jurisdiction."[21] The "familiarity of the forum with the law that will govern the case" is a public interest factor that the court considers in determining venue. *In re Volkswagen of America, Inc.,* 545 F.3d at 315.

Yet, OCSLA, the federal statute under which Fairfield has filed suit, contains a choice of law provision, stating:

---

[20]   R. Doc. 9-3; 9-4.

[21]   R. Doc. 1-4 at 8.

> To the extent that they are applicable and not
> inconsistent with this subchapter or with other Federal
> laws and regulations . . . **the civil and criminal laws
> of each adjacent State . . . are declared to be the law
> of the United States for that portion of the subsoil
> and seabed of the outer Continental Shelf**, and
> artificial islands and fixed structures erected
> thereon, which would be within the area of the State if
> its boundaries were extended seaward to the outer
> margin of the Outer Continental Shelf. (emphasis
> added).

43 U.S.C. § 1333(a)(2)(A). Fairfield has presented evidence that most of the data, the licensing fees for which form the basis of this suit, concern the subsoil and seabed adjacent to Louisiana.[22] It has not been alleged that the relevant Louisiana law conflicts with federal law. Therefore, under OCSLA's choice of law provision, Louisiana's substantive law governs the litigation. *See Gulf Offshore Co. v. Mobil Oil Corp. et al.*, 453 U.S. 473, 486 (1981) (OCSLA "contains an explicit choice-of-law provision").

The parties' agreement to apply Texas's law to their disputes cannot override the choice of law established by Congress. In this regard, the Fifth Circuit has stated, "We find it beyond any doubt that OCSLA is itself a Congressionally mandated choice of law provision requiring that the substantive law of the adjacent state is to apply even in the presence of a choice of law provision in the contract to the contrary." *Union Texas Petroleum Corp. v. PLT Eng'g, Inc.*, 895 F.2d 1043, 1050

---

[22]    R. Doc. 8-1.

(5th Cir. 1990). In *Union Texas Petroleum*, the court determined
that the parties' choice of admiralty law should not be honored,
holding that "[a]lthough Louisiana's choice of law rules might
enforce this choice of law provision, OCSLA will not." *Id; see
also Texaco Exploration and Prod., Inc. v. AmClyde*, 448 F.3d 760
(5th Cir. 2006) ("[OCSLA'S] choice of law rules are not subject
to exception by the parties' agreement."), *amended on reh'g*, 453
F.3d 652 (5th Cir. 2006). Therefore, the Texas choice of law
provision in the 2007 MLA, which is contrary to OCSLA, does not
apply to the dispute.

Nevertheless, the Court concludes that this factor is not
sufficient to overcome El Paso's showing that Texas is the
preferred venue. The convenience of the witnesses favors Texas,
and the existence of a valid forum selection clause tips the
scales in support of a Texas forum. *See Stewart*, 487 U.S. at 33
(Kennedy, J., concurring) ("A valid forum-selection clause
[should be] given controlling weight in all but the most
exceptional cases"). Fairfield has not shown that the forum
selection clause is unenforceable.[23] Indeed, these clauses are
presumptively valid, and there is no evidence that would militate

---

[23]   Although OCSLA's choice of law rule invalidates the
2007 MLA's choice of law provision; the agreement's severability
clause, *see* R. Doc. 1-4 at 8, permits this provision to be
excised without invalidating the other provisions of the
contract, such as the forum clause. *See, e.g., Swat 24 Shreveport
Bossier, Inc. v. Bond*, 808 So. 2d 294, 309 (La. 2001) (contract's
severability clause allowed for removal of offending language and
enforcement of contract's remaining provisions).

13

against the enforceability of the clause, such as fraud or overreaching, countervailing public policy, or that Fairfield would be denied access to Texas courts. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10-15 (1972) (forum selection clause is *prima facie* valid absent a strong showing that it should not be enforced).

Further, a contract dispute between Texas companies over license fees owed for seismic data does not pose administrative difficulties if tried in Texas. *See In re Volkswagen of America, Inc.*, 545 F.3d at 315.  Nor is it a local dispute of significant interest to Louisiana, even if the data are derived from Louisiana properties. *Id*. The dispute does not involve the use of or title to Louisiana land, but rather fees for access to seismic data, not the land. For all of the foregoing reasons, the Court finds that El Paso's motion to transfer venue to the Southern District of Texas must be granted.

New Orleans, Louisiana, this __6th__ day of September, 2012.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

14