UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **FAIRFIELD INDUSTRIES, INC. d/b/a FAIRFIELDNODAL** | * * | CIVIL ACTION |
| | * | NO: 4:12-cv-02665 |
| v. | * | |
| | * | JUDGE GILMORE |
| **EL PASO E&P COMPANY, L.P.** | * * | |

* * * * * * * * * * * * * * * * * * * * * * * * *

### MEMORANDUM IN SUPPORT OF FAIRFIELD'S MOTION FOR PRELIMINARY INJUNCTION

Fairfield Industries, Inc. ("Fairfield") filed a motion for preliminary injunction to prevent the defendant, EP Energy E&P Company, LP, f/k/a El Paso E&P Company, L.P. ("EP Energy") from purposefully increasing its insolvency and depriving Fairfield of its legal and equitable remedies in this lawsuit. El Paso is indebted to Fairfield for license fees owed under certain Master License Agreements involving Fairfield's proprietary seismic data on the Outer Continental Shelf ("OCS"). Nearly three and a half months after Fairfield filed its original complaint in this action, EP Energy divested itself of several valuable assets, which EP Energy has described as "all of [EP Energy's] operating Gulf of Mexico properties." These activities have, to Fairfield's belief, rendered EP Energy insolvent within the meaning of the Uniform Fraudulent Transfer Act, Texas Bus. & Com. Code §§24.002(2), (5), and 24.003(a). Therefore, Fairfield is seeking a preliminary injunction to prohibit the further transfer by EP Energy of any of its assets until a final, non-appealable judgment is rendered on the merits of Fairfield's underlying claims.

## I.  BACKGROUND

**A.  EP Energy breaches two seismic license agreements with Fairfield, and Fairfield is forced to file this lawsuit.**

Fairfield owns a large portfolio of proprietary OCS seismic data, portions of which it licensed to two of EP Energy's predecessor companies, Zilkha Energy Company ("Zilkha") and Sonat Exploration Company ("Sonat"), pursuant to Master License Agreements dated effective April 9, 1992 (the "Zilkha MLA") and February 19, 1990 (the "Sonat MLA"), respectively. At the time that Fairfield entered into each of such license agreements, Zilkha and Sonat were not affiliated with one another. In exchange for obtaining access to the data covered by their respective license agreements, Zilkha and Sonat each agreed, among other things, that if a controlling interest in such licensee was acquired by another entity, Zilkha or Sonat, as applicable, would pay Fairfield certain additional license fees. After undergoing a series of name changes, Zilkha merged with El Paso E&P Company, LP ("El Paso") on December 31, 2005. Thereafter, Sonat merged with El Paso on June 30, 2006. Upon the respective effective dates of each of these mergers, El Paso owed, but failed to pay, additional license fees as follows:

    (a)    pursuant to the Zilkha MLA, the principal amount of $14,755,393; and

    (b)    pursuant to the Sonat MLA, the principal amount of $1,423,270.[1]

On March 28, 2012, Fairfield filed its first complaint in this lawsuit seeking recovery of these license fees owed under the Zilkha MLA and Sonat MLA, plus interest. The potential liability of El Paso (now known as EP Energy) on Fairfield's two claims, including the principal

---

[1] Complaint, R. Doc. 1. For more factual background concerning the allegations stated in Fairfield's original complaint, see Fairfield's Memorandum in Opposition to El Paso's Motion to Dismiss Pursuant to Rule 12(B)(1), R. Doc. 35.

amounts set forth above and prejudgment interest calculated through December 31, 2013, totals not less than $23,769,356.[2]

**B.      EP Energy sells substantially all of its Gulf of Mexico properties.**

On July 19, 2012 (three and a half months after the filing of this lawsuit) and unbeknownst to Fairfield, EP Energy sold substantially all of the assets that it owned in the Gulf of Mexico, Outer Continental Shelf ("GOM"), to Natural Gas Partners Assets, LLC pursuant to an assignment (the "Assignment").[3] Those assets included, among things:

      (a)      57 mineral leases in the Gulf of Mexico;

      (b)      at least two mineral leases in the State of Louisiana or its waters offshore;

      (c)      215 wells; and

      (d)      production platforms and associated equipment.[4]

According to the affidavit of EP Energy's employee, David Moore, filed in these proceedings, the properties sold pursuant to the Assignment were "all of [EP Energy's] operating Gulf of Mexico properties," and said sale "end[ed] its exploration and production activities on the OCS."[5]

This sale of assets is described in the "Condensed Consolidated Financial Statements as of June 30, 2012" ("Financial Statements") of EP Energy's ultimate parent, EP Energy, LLC, a publicly traded company.[6] According to the Financial Statements:

      (a)      the gross purchase price for the properties sold by EP Energy by means of the Assignment was approximately $103 million, and the sales proceeds net of purchase price adjustments were approximately $79 million (page 9); and

---

[2] Fairfield's First Amended Complaint, R. Doc. 43.
[3] The Assignment is attached as Exhibit 1 to Fairfield's First Amended Complaint, R. Doc. 43-1 through 43-3.
[4] Id.
[5] R. Doc. 29-2.
[6] The Financial Statements are attached as Exhibit 2 to Fairfield's First Amended Complaint, R. Doc. 43-4.

      (b)    said properties are burdened with approximately $64 million of asset retirement liability (<u>e.g.</u>, plugging and abandonment, platform removal, and site clearance) (page 11 at note 5, footnote 2).[7]

Netting the aforesaid asset retirement liabilities ($64 million) associated with the Gulf of Mexico properties sold by defendant EP Energy against their net sales proceeds ($79 million) yields a balance of not more than $15 million, exclusive of any other liabilities or obligations that EP Energy may have.

Additionally, according to the Financial Statements, as of June 30, 2012, EP Energy, LLC and <u>all</u> of its subsidiaries, including other entities besides EP Energy, had accrued only approximately $23 million for all of the liability associated with those entities' legal proceedings and other contingent matters. Said total sum includes $22 million accrued for sales tax reserves. This leaves only <u>$1 million</u> for all of the contingent liability associated with legal proceedings and other matters, for EP Energy, LLC and all of its other subsidiaries, including the nearly $24 million contingent liability of just one of those subsidiaries, EP Energy, in this action.[8]

**C.     EP Energy refuses Fairfield's requests for some reasonable assurance that EP Energy can satisfy a judgment in this case.**

Immediately following a December 14, 2012 scheduling hearing in this lawsuit, counsel for Fairfield asked counsel for EP Energy whether the defendant remained solvent and whether it would be able to satisfy a judgment against it in this lawsuit if Fairfield prevails on its claims. Counsel responded that EP Energy's parent company or companies had substantial assets, but gave no information of any kind concerning the defendant, itself. Counsel advised that he was hesitant to discuss the defendant's status because he was not sure what information was publicly available, but he agreed to try and locate certain available public information and send to counsel for Fairfield. Later that day, counsel for EP Energy sent the Financial Statements and other

---

[7] Id.
[8] Financial Statements, note 8, at page 14.

financial records of EP Energy's parent company. Counsel provided no financial records of the defendant, EP Energy.

Alarmed by the information provided in the EP Energy's parent's financial statements and by EP Energy's unwillingness to provide specific information on its own financial status, Fairfield wrote EP Energy a letter on December 21, 2012, asking for reasonable assurances that EP Energy would maintain unencumbered assets sufficient to satisfy a judgment in this matter. Fairfield asked that said assurances be provided by January 3, 2013, so that it would not have to seek relief from the Court in an amended complaint.[9]

EP Energy responded in a letter sent on January 3, 2013. In that letter, EP Energy failed to even deny the defendant's insolvency and bluntly refused to offer any assurances of its continued solvency or ability to satisfy an adverse judgment in this matter.[10]

On January 4, 2013, Fairfield filed its First Amended Complaint seeking relief under the Uniform Fraudulent Transfer Act, Texas Bus. & Com. Code § 24.001, *et seq*. ("UFTA").

## II.    ARGUMENT

**A.    UFTA specifically provides for injunctive relief to prevent further fraudulent disposition of assets.**

UFTA creates a statutory cause of action allowing a creditor to seek recourse for a fraudulent transfer of assets or property.[11] The purpose of UFTA is to prevent fraudulent transfers of property by a debtor who intends to defraud creditors by placing assets beyond their

---

[9] See December 21, 2012 letter from Gerald F. Slattery, Jr. attached as Exhibit 3 to Fairfield's First Amended Complaint, R. Doc. 43-5.
[10] See January 3, 2013 letter from James A. Porter attached as Exhibit 4 to Fairfield's First Amended Complaint, R. Doc. 43-6.
[11] Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd., 80 S.W.3d 601, 607 (Tex. App. 2002).

reach.[12]   To further this purpose, UFTA specifically allows a plaintiff to obtain an "injunction against further disposition . . . of the asset transferred or of other property."[13]

Because Fairfield's requested injunctive relief is specifically provided for by statute, it is appropriate relief to prevent EP Energy from further dissipating its assets.  Injunctive relief is also appropriate because the remedies prayed for by Fairfield in its First Amendment complaint are based in equity, and preliminary injunctions and temporary restraining orders have traditionally been available in a suit seeking equitable relief.[14]

**B.     Traditional equitable principles support the granting of a preliminary injunction.**

In deciding whether a preliminary injunction is appropriate, courts may grant the injunction if the movant shows: (1) a substantial likelihood of prevailing on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) the threatened injury outweighs any harm that will result to the non-movant if the injunction is granted; and (4) the injunction will not disserve the public interest.[15]  Each element is readily satisfied here.

1.     <u>Fairfield is likely to prevail on the merits of its UFTA claim.</u>

There is a substantial likelihood that Fairfield will prevail on its UFTA claim.  A creditor with a claim against a debtor can seek redress for "fraudulent transfers" by the debtor. Fraudulent transfers include any transfer made "with actual intent to hinder, delay, or defraud any creditor of the debtor."[16]  Here, the information available to Fairfield suggests strongly that EP Energy had acted with "intent to hinder, delay, or defraud" Fairfield.  Despite repeated requests, EP Energy has refused to provide Fairfield with any specific information concerning its

---

[12] Id.
[13] Tex. Bus. & Com. Code § 24.008(a)(3)(A).
[14] <u>Deckert v. Independence Shares Corp.</u>, 311 U.S. 282, 288, 61 S. Ct. 229, 233, 85 L. Ed. 189 (1940); <u>United States v. First Nat. City Bank</u>, 379 U.S. 378, 385, 85 S. Ct. 528, 532 (1965), citing <u>United States v. Morris & Essex R. Co.</u>, 135 F.2d 711, 713-14 (2d Cir. 1943).
[15] <u>Byrum v. Landreth</u>, 566 F.3d 442, 445 (5th Cir. 2009).
[16] Tex. Bus. & Com. Code § 24.005.

current financial status or any evidence to even suggest it can satisfy any money judgment in favor of Fairfield. Worse, EP Energy has not even denied its insolvency, and it expressly refused Fairfield's request for any reasonable assurance that it will satisfy a judgment in this case. This conduct, coupled with the fact the EP Energy sold its assets soon after Fairfield filed this lawsuit, strongly indicates that EP Energy acted with ill-intent sufficient for its conduct to be deemed "fraudulent" under UFTA.[17]

Even without any actual fraudulent intent, a transfer is deemed "fraudulent" under UFTA if (1) made by the debtor without receiving reasonably equivalent value, and (2) the debtor was insolvent at the time of the transfer or became insolvent at the time of the transfer.[18] As noted above, EP Energy has admitted that, by virtue of the July 19, 2012 Assignment, it sold "all of [EP Energy's] operating Gulf of Mexico properties" and that said sale "end[ed] its exploration and production activities on the OCS." The Financial Statements of EP Energy's parent company further reveal that, as of June 30, 2012, EP Energy's parent company and all of its subsidiaries (including EP Energy) had accrued only $1 million for all of the contingent liability associated with legal proceedings and other matters for EP Energy, LLC and all of its other subsidiaries, including the nearly $24 million contingent liability of EP Energy in this action. For these and the reasons described above, Fairfield strongly believes that the sum of EP Energy's debts is far greater than its assets, such that said defendant is insolvent within the meaning of UFTA.[19] If EP Energy is allowed to transfer the net sales proceeds of the properties sold pursuant to the Assignment (through payment of dividends or distributions to its equity

---

[17] Tex. Bus. & Com. Code § 24.005 (identifying certain "badges of fraud" to consider in determining fraudulent intent, including the following factors: (i) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit, (ii) the transfer was of substantially all the debtor's assets, (iii) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred).

[18] Tex. Bus. & Com. Code § 24.006(a); Metra United Escalante, L.P. v. Lynd Co., 158 S.W.3d 535, 542-543 (Tex. App. 2004) ("[A] fraudulent transfer defined by section 24.006(a) does not include intent as an element of required proof.").

[19] Tex. Bus. & Com. Code §§ 24.002(2), (5), and 24.003(a)

owners, for example) without receiving a reasonably equivalent value in exchange, it will increase EP Energy's insolvency and further limit Fairfield's ability to fully recover its damages in this lawsuit. Thus, Fairfield's likelihood of success on the merits is substantial and warrants issuance of a preliminary injunction.

    2.    <u>There is a substantial threat that Fairfield will suffer irreparable injury if an injunction is not granted.</u>

Fairfield will suffer actual, imminent, and irreparable injury if an injunction is not issued. Without preliminary injunctive relief, EP Energy could continue to transfer assets, increase its insolvency, and leave itself with insufficient assets to satisfy its obligations to Fairfield.[20] Additionally, Fairfield would be entirely deprived of its equitable remedies under UFTA, specifically, a prohibition on further transfer of assets. This remedy, which is specifically contemplated by UFTA, will be lost without entry of a preliminary injunction. Unsurprisingly, courts in fraudulent transfer cases have routinely recognized that further dissipation of assets would be an irreparable harm to a plaintiff.[21] For these reasons, a preliminary injunction is needed to protect Fairfield's legal and equitable remedies and thereby prevent further irreparable injury to Fairfield.

---

[20] <u>See, e.g.</u>, <u>Tel. Equip. Network</u>, 80 S.W.3d 601, 611 (granting a preliminary injunction on UFTA claim and recognizing that "a plaintiff does not have an adequate remedy at law if the defendant is insolvent"); <u>BAC Home Loans Servicing, LP v. Texas Realty Holdings, LLC,</u> CIV.A. H-09-2539, 2010 WL 3522981 (S.D. Tex. July 6, 2010) ("A substantial threat of irreparable injury may exist if a plaintiff is left without an adequate remedy because the defendant dissipates property that may be used to secure a judgment.").

[21] <u>See, e.g.</u>, <u>S. New Eng. Tel. Co. v. Global Naps, Inc.</u>, 595 F. Supp. 2d 155, 159 (D. Mass. 2009) ("This Court is persuaded that, absent an injunction, there is a substantial risk that [defendants] will dissipate, conceal or otherwise secrete assets thus causing irreparable harm to [plaintiff]."); <u>Seib v. Am. Sav. & Loan Ass'n of Brazoria County</u>, 1991 WL 218642, at *4 (Tex. App 1991) ("The property has been the subject of a scheme of fraudulent conveyances. If further transfers of such property are not enjoined, appellees will be forced to file lawsuits against subsequent transferees in an attempt to recover the property.") <u>Janvey v. Alguire</u>, 647 F.3d 585 (5th Cir. 2011) ("If the defendants were to dissipate or transfer these assets out of the jurisdiction, the district court would not be able to grant the effective remedy.")

3. <u>If the injunction is denied, the irreparable injury to Fairfield substantially outweighs any harm that EP Energy would incur if it's granted.</u>

Any harm threatened to EP Energy by grant of a preliminary injunction is far outweighed by the injury threatened to Fairfield if a preliminary injunction is denied. A preliminary injunction prohibiting EP Energy from disbursing sales proceeds and other assets will be temporary, lasting only until a final, non-appealable judgment in this case (set for trial in January 2014). This injunction will not harm EP Energy, as it will retain beneficial ownership of its assets and proceeds, which can continue to earn interest and other investment income during the pendency of this lawsuit.[22]

4. <u>A preliminary injunction furthers, rather than disserves, the public interest.</u>

Lastly, granting a preliminary injunction will not disserve the public interest, in that a preliminary injunction will ensure that EP Energy retains the means to satisfy its contractual obligations, fulfilling the reasonable commercial expectations of both Fairfield and EP Energy. Accordingly, Plaintiffs' operations further the public interest and warrant issuance of a preliminary injunction.

**C.   The posting of security is not required.**

The amount of security required in connection with a preliminary injunction is a matter of discretion of this Court, and the Court "may elect to require no security at all."[23] Here, Fairfield has narrowly tailored its proposed injunction in such a way as should prevent any damages to EP Energy. It prevents EP Energy from transferring its assets but does not prevent it from

---

[22] See Jorgensen v. Cassiday, 320 F.3d 906, 919 (9th Cir. 2003) (holding that defendants would suffer no harm from injunction since funds would be held in interest-bearing account).
[23] Corrigan Dispatch Co. v. Casa Guzman, 569 F.2d 300, 303 (5th Cir. 1978); Kaepa, Inc. v. Achilles Corp., 76 F.3d 624, 628 (5th Cir. 1996); see also Allied Home Mortg. Corp. v. Donovan, 830 F. Supp. 2d 223, 235 (S.D. Tex. 2011) ("The Fifth Circuit has held that courts in this Circuit have the discretion to issue injunctions without security.")

conducting business on or otherwise using those properties. The granting of a preliminary injunction will not harm EP Energy.[24] The posting of security should not be required.

### III.   CONCLUSION

For all of these reasons, Fairfield, after a full evidentiary hearing, is entitled to a preliminary injunction prohibiting EP Energy from transferring any of its assets, to the extent that said transfers would leave EP Energy with less than $25 million of unencumbered assets.

Respectfully submitted,

**SLATTERY, MARINO & ROBERTS**
Energy Centre, 1100 Poydras Street
Suite 1800
New Orleans, Louisiana 70163
Telephone: (504) 585-7800
Telecopier: (504) 585-7890

By:     /s/ Taylor P. Mouledoux (w/ permission)
Gerald F. Slattery, Jr., (La. Bar Roll 12129)
Colleen C. Jarrott (La. Bar Roll 30839)
Taylor P. Mouledoux (La. Bar Roll 31889)

and

Michael L. Grove
Law Offices of Michael L. Grove
6750 West Loop South
Suite 675
Bellaire, Texas 77401
Telephone: (832) 308-7771
Telecopier: (832) 532-3108

Attorneys for plaintiff, Fairfield Industries, Inc.
d/b/a FairfieldNodal

---

[24] BAC Home Loans Servicing, 2010 WL 3522981, at *5 ("Here, the court has narrowly tailored the injunction in such a way as should prevent any damages to Groves. The injunction prevents Groves from transferring her properties but does not prevent her from conducting business on or otherwise using her properties. Thus, Groves remains free to possess and use her properties. . . . Thus, the court RECOMMENDS that no security be required.").

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 4th day of January, 2013, a copy of the above and foregoing was transmitted to counsel of record through the Court's CM/ECF filing system.

                                                                        /s/Taylor P. Mouledoux
                                                                        Taylor P. Mouledoux