**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| FAIRFIELD INDUSTRIES, INC., d/b/a | § | |
| FAIRFIELDNODAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-12-2665 |
| | § | |
| EP ENERGY E&P COMPANY, L.P., f/k/a | § | |
| EL PASO E&P COMPANY, L.P., | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION
ON MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter was referred by United States District Judge Vanessa D. Gilmore, for full pre-trial

management, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B).  (Docket Entry #42).  The case involves

fees allegedly due under license agreements for the use of proprietary information.  Pending before

the court is a motion to dismiss, for lack of subject matter jurisdiction, that was filed by Defendant EP

Energy E&P Company, L.P., formerly known as El Paso E&P Company, L.P. ("Defendant," "EPE").

(Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Memorandum in Support

of Motion to Dismiss Pursuant to Rule 12(b)(1) ["Motion"], Docket Entry #29).  Plaintiff Fairfield

Industries, Inc., doing business as FairfieldNodal ("Plaintiff," "Fairfield"), has responded in opposition

to that motion, and Defendant has replied.  (Fairfield's Memorandum in Opposition to El Paso's

Motion to Dismiss Pursuant to Rule 12(b)(1) ["Response"], Docket Entry #35; Defendant's Reply

Memorandum in Support of Motion to Dismiss ["Reply"], Docket Entry #38).  Having reviewed the

pleadings, the evidence, and the applicable law, it is RECOMMENDED that Defendant's motion to

dismiss be GRANTED, and that this case be DISMISSED, under Rule 12(b)(1) of the Federal Rules

of Civil Procedure, for lack of subject matter jurisdiction.

**Background**

The primary issue before the court is whether there is subject matter jurisdiction under the federal Outer Continental Shelf Lands Act ("OCSLA").  (Motion at 1-2).  Plaintiff in this case, Fairfield Industries, Inc., doing business as FairfieldNodal, gathers high quality two- and three-dimensional seismic data from the Gulf of Mexico, offshore of Louisiana.  (Complaint,[1] Docket Entry #1, at 2).  Fairfield then licenses this data for use by other companies.  (*Id.*).  Under Fairfield's licensing agreements, if a company is acquired by, or merged with another, the successor company may have use of the data under the same contract, provided that an additional fee is paid.  (*Id.* at Exhibit ["Ex."] 1-3).  Fairfield claims here that EPE is the successor to some of its licensees, but that Defendant has not paid those additional "transfer" fees that are required under the contracts.  (*See id.* at 3-8).  Plaintiff contends that this court's jurisdiction arises under the OCSLA, which governs specific claims related to activity on the Outer Continental Shelf ("OCS").  (*Id.* at 1-2).

Before addressing the jurisdictional issue, a brief summary of the licenses, and the relationship between these licensees and EPE, is critical to an understanding of Plaintiff's claims.

*Zilkha Master License Agreement*

On April 9, 1992, Zilkha Energy Company ("Zilkha") entered into a Master License Agreement for Non-Seismic Data with Fairfield (the "Zilkha MLA").  (*Id.* at 3 & "Ex." 1).  The agreement allowed Zilkha to use data owned by Fairfield, provided that Zilkha would "in no event Disclose or Transfer the Data to Third Parties . . . except as may be specifically provided in this Agreement."  (*Id.*).  The MLA also stated the following:

---

[1] In its Second Amended Complaint, Plaintiff stated that it was incorporating all statements of fact and claims that had been raised in the original Complaint.  (Fairfield's Second Amended Complaint, Docket Entry #49, at 1).  For that reason, in this memorandum, the court will reference the original Complaint in outlining Plaintiff's allegations.

> Licensee may transfer the Data to Partners and Purchasers, respectively, in Third Party Business Transactions or Third Party Acquisitions consummated at any time after the date hereof, provided that all said Third Parties shall (i) agree, in writing (a copy of which will be provided to Data Owner) to the conditions set forth in subclauses 5.1.3.1 through 5.1.3.5 above and (ii) pay to Data Owner an additional license fee of 50% of the original license fee paid by Licensee to Data Owner for said Data.

(*Id*.; *see* Defendant's Answer ["Answer"], Docket Entry #23, at 3).  On January 30, 1998, Zilkha changed its name to Sonat Exploration GOM, Inc. ("Sonat GOM").  (Complaint at 4).  On October 25, 1999, Sonat GOM changed its name to El Paso Production GOM, Inc. ("El Paso GOM").  (*Id*.). On December 31, 2005, El Paso GOM, Inc., merged with Defendant EPE.  (*Id*.).  Plaintiff claims that the Zilkha MLA remained in force throughout these name changes and that, as a result, EPE owes a transfer fee to Fairfield.  (*Id*. at 8-9).

*Coastal Master License Agreement and Amendment*

On May 18, 1999, Fairfield entered into a Master License Agreement with Coastal Oil & Gas Corporation ("Coastal") (the "Coastal MLA").  (*Id*. & Ex. 2, 3; Answer at 3).  On March 9, 2001, Coastal changed its name to El Paso Production Oil & Gas Company, and, on June 30, 2006, that company became El Paso Exploration & Production Management, Inc.  (*Id*. at 3; Complaint at 4). Like the Zilkha MLA, the Coastal MLA provided that a transfer fee must be paid if a successor company chooses to continue the license.  (*Id*. at Ex. 2).

On October 14, 2002, Fairfield and a different business, El Paso Production Company ("El Paso Production"), purported to execute an amendment to the Coastal Master License Agreement (the "Coastal MLA Amendment").  (*Id*. at 4; Answer at 3).  In the Coastal MLA Amendment, El Paso Production represented that it was the "successor by name change" to Coastal.  (*Id*.; Complaint at 5). In this litigation, the parties agree that El Paso Production was not, in fact, Coastal's successor, but they also agree that the Coastal MLA Amendment is valid between Fairfield and El Paso Production.

(*Id*.; Answer at 3).

The Coastal MLA Amendment expressly referenced three license agreements, as follows:

(i)     a January 24, 1991 Master License Agreement between FairfieldNodal and Coastal (an agreement different from the Coastal MLA, and covering a different data set);

(ii)    a February 19, 1990 Master License Agreement (the "Sonat MLA") between Fairfield and Sonat Exploration Company ("Sonat");[2] and

(iii)   the Zilkha MLA.

(*Id*. at 5 & Ex. 3).  Under the terms of the amendment, those three license agreements were terminated, and any rights that had existed under them was now subject to the provisions of the Coastal MLA Amendment.  (*Id*.).  Plaintiff claims that some of the original Coastal MLA was terminated by the amendment, as well.  (*See id*.; Answer at 4).  On June 30, 2006, El Paso Production merged with EPE. (Complaint at 6).

*2007 Master License Agreement*

On May 22, 2007, Plaintiff and Defendant EPE entered into a Master License Agreement (the "2007 MLA").  (*Id*. at 7 & Ex. 4).  In that agreement, the parties clarified that EPE was the successor in interest to El Paso Production, Sonat GOM, El Paso Production GOM, Inc., Coastal, Sonat Exploration Company, and Zilkha.  (*Id*.).  The 2007 MLA also provided that the Coastal MLA, the Coastal MLA Amendment, "and all other Master License Agreements between [El Paso's] predecessors in interest," were "hereby cancelled without prejudice to the rights and obligations accrued thereunder to the date of this Agreement."[3]  (*Id*.).

---

[2] At the time the Coastal MLA Amendment was executed, Sonat had already changed its name to El Paso Production Company.  (Complaint at 5).

[3] In this litigation, Plaintiff does not claim that the 2007 MLA was breached.  (*Id*. at 8-9).

Believing that Defendant owed transfer fees under the Zilkha MLA, the Sonat MLA, the Coastal MLA, and the Coastal MLA Amendment, Plaintiff filed a lawsuit in the United States District Court for the Eastern District of Louisiana. (*See* Docket Entry #1; *see* Motion at 9). In that Complaint, Plaintiff brought claims for breach of the Zilkha MLA, unjust enrichment, breach of the Coastal MLA and the Coastal MLA Amendment, and unjust enrichment for data that EPE obtained under the Sonat MLA. (Complaint at 8-9). On March 28, 2012, the case was transferred to this court on Defendant's motion. (*See* Docket Entry #1).

On October 11, 2012, Defendant filed its motion to dismiss for lack of subject matter jurisdiction. In that motion, EPE argues that the OCSLA does not apply to Plaintiff's claims, because "[Fairfield] merely had to provide Defendant with a copy of its pre-existing seismic data," as opposed to gathering new data. (*Id.*). Having reviewed the pleadings, the evidence presented, and the applicable law, the court agrees with EPE that subject matter jurisdiction is lacking in this case.

**Standard of Review**

A motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 12(b)(1); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012). Such a motion tests the court's "statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citations omitted); *see In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286. If the court lacks authority to adjudicate a case, it must dismiss the action for lack of jurisdiction. *Id.* (citing *Home Builders Ass'n of Miss., Inc.*, 143 F.3d at 1010).

The burden of proving jurisdiction is on the party who asserts it. *See id.*; *Del-Ray Battery Co.*

*v. Douglas Battery Co.*, 635 F.3d 725, 370 (5th Cir. 2011) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The allegations of its pleading must be taken as true, and all inferences must be drawn in its favor. *See Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985). As a rule, "'[i]t is to be presumed that a cause lies outside [the court's] limited jurisdiction,'" absent a clear showing to the contrary. *See Del-Ray Battery Co.*, 635 F.3d at 370 (quoting *Kokkonen*, 511 U.S. at 377)

**Discussion**

"The federal courts are courts of limited jurisdiction." *USPPS, Ltd. v. Avery Dennison Corp.*, 647 F.3d 274, 284 (5th Cir. 2011); *accord Del-Ray Battery Co.*, 635 F.3d at 370 (quoting *Kokkonen*, 511 U.S. at 377). Federal district courts have original jurisdiction only if there is "diversity of citizenship between the parties"; if "the claim 'arises under' federal law"; or "by virtue of some other explicit grant of jurisdiction." *Powers v. South Cent. United Food & Commercial Workers Unions & Employers Health & Welfare Trust*, 719 F.2d 760, 763 (5th Cir. 1983); *see Preston v. Tenet Healthsystem Mem'l Med.*, 485 F.3d 804, 809-10 (5th Cir. 2007); *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 721 n.5 (5th Cir. 1996). A district court has diversity jurisdiction if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states." 28 U.S.C. § 1332(a)(1). In this case, the court lacks diversity jurisdiction, because both parties are citizens of Texas. (*See* Complaint at 1). Consequently, the court has jurisdiction here only if Plaintiff's claims arise under federal law generally, or "by virtue of some other explicit grant of jurisdiction." *See Powers*, 719 F.2d at 763. EPE claims that there is no basis, under federal law, for the court to exercise subject matter jurisdiction over these claims. (Motion at

1-2).  On the other hand, Plaintiff insists that the court's jurisdiction is explicit under § 1349(b) of the

OCSLA.  (Complaint at 1-2).  That section provides, in pertinent part, as follows:

> district courts of the United States shall have jurisdiction of cases and controversies arising out of, or in connection with (A) any operation conducted on the outer Continental Shelf which involves exploration, development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf, or which involves rights to such minerals....  Proceedings with respect to any such case or controversy may be instituted in the judicial district in which any defendant resides or may be found, or in the judicial district of the State nearest the place the cause of action arose.

43 U.S.C. § 1349(b).

Plaintiff contends that this case falls within § 1349(b) because it arose out of, or is connected

with, a qualifying "operation conducted on the outer Continental Shelf"; specifically, because the case

concerns Defendant's "failure to pay ... fees owed for the use of plaintiff's proprietary geophysical

seismic data concerning the seabed and subsoil of the [OCS] offshore Louisiana." (Complaint at 1-2).

Defendant argues, however, that none of Plaintiff's claims are sufficiently connected to an "operation"

for purposes of the statute.  (Motion at 5).  In particular, Defendant argues the following:

> In this case, based upon plaintiff's own complaint and the attached [to the motion to dismiss] licenses, the dispute concerns simply whether a fee is owed for the defendant's use of Fairfield's seismic data; the defendant did not contract for an operation of conducting a seismic survey on the Outer Continental Shelf....  Because there is no physical act constituting exploration on the OCS at issue in this case, based on the plain language of the statute, there is no subject matter jurisdiction under 42 [sic] U.S.C. § 1349(b)(1).

(*Id*.).

Unfortunately, the OCSLA does not define the term "operation."  *See EP Operating Ltd.*

*P'Ship v. Placid Oil Co.*, 26 F.3d 563, 567 (5th Cir. 1994); *Amoco Prod. Co. v. Sea Robin Pipeline*

Co., 844 F.2d 1202, 1207 (5th Cir. 1988).  The Fifth Circuit has recognized, however, that, as used

in the statute, the word generally "contemplate[s] the doing of some physical act on the OCS." *Placid*

*Oil Co.*, 26 F.3d at 567 (citing *Sea Robin Pipeline Co.*, 844 F.2d at 1207).  The Fifth Circuit has also

recognized that the "physical act" itself must take place in conjunction with the "exploration,

development, or production of the minerals, of the subsoil and seabed of the outer Continental Shelf,

or which involves rights to such minerals."  *Sea Robin Pipeline Co.*, 844 F.2d at 1207 (citing 43

U.S.C. § 1349(b)); *see Placid Oil Co.*, 26 F.3d at 567 (stating that "the term [operation] does not stand

alone, but rather it is used in conjunction with the terms 'exploration,'" etc.).  The term "exploration,"

which is most relevant to this case, is defined, in the OCSLA, as follows:

> the process of searching for minerals, including (1) geophysical surveys where
> magnetic, gravity, seismic, or other systems are used to detect or imply the presence
> of such minerals, and (2) any drilling, whether on or off known geological structures,
> including the drilling of a well in which a discovery of oil or natural gas in paying
> quantities is made and the drilling of any additional delineation well after such
> discovery which is needed to delineate any reservoir and to enable the lessee to
> determine whether to proceed with development and production.

43 U.S.C. § 1331(k).

Courts in this Circuit have made it clear that a dispute must have a sufficient nexus to an

operation on the OCS to fall within the jurisdictional reach of the OCSLA.  *See Grand Isle Shipyard,*

*Inc. v. Seacor Marine, LLC*, 589 F.3d 778, 784-85 (5th Cir. 2009); *Placid Oil Co.*, 26 F.3d at 567;

*United Offshore Co. v. Southern Deepwater Pipeline Co.*, 899 F.2d 405, 406-07 (5th Cir. 1990); *Sea*

*Robin Pipeline Co.*, 844 F.2d at 1207; *Laredo Offshore Constrs., Inc. v. Hunt Oil Co.*, 754 F.2d 1223,

1225 (5th Cir. 1985); *W & T Offshore, Inc. v. Apache Corp.*, ___ F. Supp. 2d ___, 2013 WL 164090,

at *9-10 (S.D. Tex. Jan. 15, 2013) (Rosenthal, J.); *In re BP p.l.c. Sec. Litig.*, 2012 WL 4739673, at *4-

5 (S.D. Tex. 2012) (Ellison, J.); *Dominion Exploration & Prod., Inc. v. Ameron*, 2007 WL 4233562,

at *4-5 (E.D. La. 2007); *Brooklyn Union Exploration Co. v. Tejas Power Corp.*, 930 F. Supp. 289,

289-92 (S.D. Tex. 1996) (Kent, J.); *Huffco Petroleum Corp. v. Transcontinental Gas*, 681 F. Supp.

400, 401-02 (S.D. Tex. 1988) (DeAnda, J.).  In those contract cases in which a court has found

jurisdiction, the dispute was deemed to be one that affected activity on the OCS.  *See*, *e.g*., *Southern*

*Deepwater Pipeline Co.*, 899 F.2d at 406-07 (dispute concerned who would operate an offshore

pipeline); *Sea Robin Pipeline Co*., 844 F.2d at 1207 (contract required producing and purchasing

natural gas); *Laredo Offshore Constrs., Inc.*, 754 F.2d at 1225 (contract required building an offshore

platform).  In contrast, in those cases in which the court has found no jurisdiction, the contracts at

issue would have no effect on the OCS.  *See*, *e.g*., *Ameron*, 2007 WL 4233562, at *4-5 (contract

involved painting an offshore facility that was being constructed under an unrelated contract);

*Brooklyn Union Exploration Co*., 930 F. Supp. at 289-92 (contracts for the purchase of gas that had

been independently produced and priced).

In this case, the licensing agreements at issue relate to pre-existing seismic data only.  (*See*

Complaint at Ex. 1-3; Motion at 2).  The data was not gathered as part of the performance due under

the contract.  (*Id*.).  Nor did the contracts require the licensee to put the data to some use that would

affect the OCS.  (*See id*.).  Further, the crux of Plaintiff's claim is that EPE failed to pay fees that were

due under the license as a result of corporate reorganizations or mergers; as such, the dispute is far

removed from any activity that affects the OCS.  (Complaint at 8-9; Reply at 2-3).  Here, then, the

claims do not appear, in any manner, to arise out of, or bear a significant connection to, an operation

on the OCS, for purposes of the OCSLA.  (*Id*.).  Indeed, the performance of the disputed contracts

would not influence activity on the OCS, nor require either party to perform physical acts on the OCS.

(*See* Complaint at 8-9).  It appears, then, that these contracts do not contemplate "the doing of some

physical act on the OCS" in conjunction with the "exploration, development, or production of the

minerals, of the subsoil and seabed of the outer Continental Shelf."  *Sea Robin Pipeline Co*., 844 F.2d

at 1207 (citing 43 U.S.C. § 1349(b)); *see Placid Oil Co.*, 26 F.3d at 567.

But Plaintiff argues that "[b]oth the acquisition and ultimate use of [its seismic] data directly involve exploration and development operations on the OCS." (Response at 1).  Fairfield further contends that:  "[t]his dispute is intimately connected to mineral exploration and development operations on the OCS, and therefore falls squarely within the broad grant of federal jurisdiction provided in the [OCSLA]." (*Id.*).  To the contrary, however, nothing in the contested agreements requires Plaintiff to gather data.  (Complaint at Ex. 1-3; Reply at 2-3 & n.2).  Instead, in those agreements, Fairfield simply agrees to give proprietary information to the licensees, for a fee. (Complaint at Ex. 1-3).

Plaintiff also argues that the contracts "contemplated" that Fairfield might gather additional data, in that the Zilkha and Sonat MLAs provided that "Licensee may wish to pre-commit to a new seismic program in progress or not yet acquired." (Response at 1-2, 4 & Ex. B, C).  The words "may wish" and "pre-commit," however, do not impose an obligation on any party.  In fact, those same provisions are followed by a statement that, if the licensee wishes to "pre-commit," "[a] Supplemental Agreement providing additional details  will be issued." (Complaint at Ex. 1-3).  By the terms of the contracts, then, data yet to be gathered was not to be licensed under the terms of the MLAs; instead, if new data was desired, the parties would enter into additional agreements.  (*See id.*).

Finally, Plaintiff posits that it "derives value from the seismic data [that it gathers] solely by licensing the data to oil and gas production companies like Zilkha, Sonat, and [EPE]," and argues that, if it cannot enforce the terms of its standard license agreements, that may impede its data-gathering activity on the OCS.  (Response at 11; *see* Reply at 3).  Again, however, the jurisdictional focus is on whether the contracts at issue have a sufficient nexus to physical activity on the OCS, not to whether

future contracts may be acquired.  *See Ameron*, 2007 WL 4233562, at \*4-5; *Brooklyn Union Exploration Co.*, 930 F. Supp. at 289-92; *see also Southern Deepwater Pipeline Co.*, 899 F.2d at 406-07; *Sea Robin Pipeline Co.*, 844 F.2d at 1207; *Laredo Offshore Constrs., Inc.*, 754 F.2d at 1225.  Here, the license agreements lack a sufficient nexus to physical activity on the OCS for jurisdictional purposes.

In sum, the disputed agreements lack the connection to a physical act on the OCS that is required to trigger § 1349(b) of the OCSLA.  *See Placid Oil Co.*, 26 F.3d at 567 (citing *Sea Robin Pipeline Co.*, 844 F.2d at 1207).  As a result, the OCSLA does not provide a basis for jurisdiction in this court.  *See id*. Further, Plaintiff's claims are for breach of contract and unjust enrichment, each of which is traditionally a state law claim.  Plaintiff has pointed to no federal statute that gives express jurisdiction to the court in this case, and the claims do not otherwise fall under federal law.  Both parties are Texas residents, precluding the exercise of diversity jurisdiction.  For these reasons, Plaintiff has failed to meet its burden to show that the court has subject matter jurisdiction to hear its claims.  *See In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d at 286; *Del-Ray Battery Co.*, 635 F.3d at 370; *Ramming*, 281 F.3d at 161.  As a result, the court recommends that Defendant's motion to dismiss for lack of subject matter jurisdiction be granted, and that this case be dismissed. Because the court cannot proceed in the absence of jurisdiction, any other pending motions are deemed moot.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendant's motion to dismiss for lack of subject matter jurisdiction be **GRANTED**, and that this case be **DISMISSED**.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

The original of any written objections shall be filed with the United States District Clerk, P.O. Box  61010,  Houston,  Texas 77208; copies of any such objections shall be delivered to the chambers of Judge Vanessa D. Gilmore, Room 9513, and to the chambers of the undersigned, Room 7007.

**SIGNED** at Houston, Texas, this 2nd day of May, 2013.

**MARY MILLOY**
**UNITED STATES MAGISTRATE JUDGE**